Our second argument of the morning is in Appeal No. 24-1133, Gwendolyn Cunningham v. Lloyd Austin, Secretary of Defense. Good morning, Your Honors. May it please the Court, I am Tay Sturgeon. I have the honor and privilege of representing the appellant, Ms. Cunningham. I note that it is voting day today, that is, Election Day. And I am honored to stand before one of the great institutions that stands as the bulwark for this great democracy. I ask the Court's indulgence in completing my brief opening introduction. All his life, blue has been his favorite color. The buyer goes out to buy a car. The dealer shows him a blue car and a black car. The black car has greater resale value, is more reliable, has more trunk space, and gets better gas mileage than the blue car. The buyer chooses the blue car anyway, simply because he likes blue better than he likes black, and is willing to forego all the better features of the black car. The buyer buys the blue car, but it breaks down on him two years later. In the meantime, another buyer buys the black car, and it's still running after four years. And the buyer saved over $500 year over year in fuel prices. I share this metaphor to illustrate what happened in this case. The selecting official, Mr. Andrew Hartz, a white male, picked Mr. Griffin for the GS-13 promotion. That is, he picked the blue car. And he did this based on his distaste for an African-American female, even though she had been performing the major functions of the job in question. She was deemed the subject matter expert in federal benefits, had over six years' experience in supervising federal employees, and was the go-to person for everything involving federal benefits. Comparing Mr. Griffin, he had none of this experience. Mr. Griffin was the team lead over the call center. The call center would refer callers who had questions about their benefits. Mr. Stray, can I just confirm before you go too much further that you are not appealing the district court's ruling as to the race discrimination claim? Is that correct? Yes. Yes, Your Honor. And you're also not appealing the ruling or pursuing your theory that Ms. Cunningham should have been noncompetitively promoted. I know you want to rely on that evidence, but you're not pursuing that as a separate claim. That's correct, Your Honor. Correct. Okay. Just for clarification, though, we are claiming that it was a race plus. That is race plus sex. A sex plus. Sex plus. Yes. And acknowledge we have not recognized that theory yet in the circuit. Yes, I would point out, however, that years ago in another case that I was involved in, that is Kaufman v. Indianapolis Fire Department, that the court did recognize a sex plus claim there, and that was sex plus height because the plaintiff in that case was under 5 foot tall. Mr. Griffin had no prior experience in federal benefits, had no prior experience in federal workers' comp claim processing, and he was not supervising employees in the federal government, whereas Ms. Cunningham clearly was. Ms. Cunningham had over six years of actually supervising federal employees. Mr. Griffin had no experience. The distinction between supervising federal employees and perhaps supervising employees in the private sector is that supervising federal employees in the federal sector has a very different meaning. A supervisor of federal employees means that the supervisor rates, ranks, and evaluates employees, offers promotions to the federal employees, and can take disciplinary action against federal employees. Mr. Story, do you agree that an honest belief that another candidate is superior is a legitimate, non-discriminatory reason for promoting or hiring somebody under the law? If it's uncontested or unchallenged, yes. If it's an honest belief, and then it flips to pretext. If there's evidence of pretext, then no. I would challenge that. But it flips to pretext. Then you look at pretext. If there's an honest belief that somebody is superior, that meets the burden under our law of a legitimate, non-discriminatory reason. Do you agree with that? And then we look at pretext. I disagree respectfully. And the reason I disagree is because honest belief is couched on one's subjective opinion. But we've said that in our law. We've said that. You may disagree with the law, but that's what the framework provides. The only point that I would make on the honest belief is that honest belief within the Seventh Circuit has been in the context of FMLA. And whereas FMLA, if the employer has another factual reason to pin to the honest belief of the decision maker, such as the employee was seen working outside her work restrictions, then that would be an independent fact that might support the honest belief of the decision maker. But when you're talking about subjective interviews and the honest belief is based simply upon the subjective opinion of the decision maker, then no. I don't think that honest belief doctrine would apply to that. But we have said that employers can legitimately consider interview performance in hiring and promotion decisions. I agree, Your Honor. But in the Levine v. DeJoy case, the Sixth Circuit, one of your sister courts, has said the courts should proceed very, very cautiously when determining the accuracy of the so-called selecting official's honest belief. So is your argument here, when you go back to what you were describing as to your assessment of Ms. Cunningham's experience in her role in fitness for the promotion, is the point that you're trying to make that it can't possibly be that the decision maker here, Mr. Hartz, held a good faith or honest belief that Emanuel Griffin was more qualified in light of Ms. Cunningham's experience? What's the overarching point? Because you're either—whether you do it on the terms you just articulated or, Judge, you have to show he either didn't hold an honest belief or his explanation was pretextual. It boils down to credibility, Your Honor. Okay? And that is—credibility is the job of the trier of fact. Is Mr. Hartz, when he claims that he had this honest belief, is he credible? But isn't that the pretext issue, not the holding of the honest belief in the first place? Your client admitted during her deposition that Hartz believed that Griffin was the best candidate for the job here. That isn't what she stated, Your Honor. She stated that he—she felt like he preferred someone other than herself. She said Mr. Hartz probably thought Mr. Griffin was more suitable for the job. I'm quoting. But she also said that he preferred someone other than myself. What's your strongest argument of pretext? There are several, Your Honor. One is she—her qualifications were overwhelmingly superior to Mr. Griffin's. She was, in fact, actually performing the major functions of the job in question. That is, she was actually supervising the benefits team. And over the course of 12 years or so, she had been acting as the chief of the benefits division when there was no incumbent acting chief. Also, that Mr. Hartz resorted to subjective questioning in his interview that led—basically reinforced his own belief, you know, that Mr. Griffin might be a more effective, quote, leader or customer service representative. But in order to lead somebody or provide customer service, you have to know the subject matter. And in this case, Mr. Griffin had no knowledge of the subject matter of federal benefits, whereas Ms. Cunningham, vastly superior subject matter knowledge. She was deemed the subject matter expert for federal benefits. Mr. Griffin came nowhere close to that. I mean, what do you—what do you do about Mr. Hartz's testimony that seems uncontested, that Ms. Cunningham's interview performance was very lacking? I don't believe he said very lacking. I think what he said that she came close, that it was a hard decision for him, that she was number one or two. And, in fact, his cohort, Ms. Shante Jones, who attended the interview, also said that Ms. Cunningham was number one or two in the interview, based upon her interview performance. So it's not as if she was number four or five. She was number one or two. And the main distinction, I believe, is that they should have looked at her prior experience, her prior skills, her prior knowledge, and the fact that she had been acting as the benefits chief off and on for 12 years. And for over six years, she was actually performing the major functions of the job in question, that is, supervising the benefits team and supervising the workers' comp team. Also, when Mr. Griffin was finally promoted by Mr. Hartz, Mr. Hartz removed one of the essential elements of that job, and that is supervising the workers' compensation. That, too, is evidence of pretext. In other words, it was just a sham promotion to get the – The five years after the fact he removed it? No. It was immediately upon promotion. Mr. Hartz designated Mr. Griffin to stay in charge of the call center, and he removed the responsibility of supervising the workers' comp team and retained it for himself. That is, Mr. Hartz retained the responsibility for supervising the workers' comp team. Let me ask you, if the court had considered the MD – is it 715 report with the statistics?  How would that lend support to your claims? Well, if you look at the report, it shows that African-American women were three times less likely to be promoted than African-American males. That is a glaring statistic. Now, certainly, you know, I recognize that statistics alone, you know, do not tell the story. But statistics combined with the other elements of the discrimination claim that we're making, that is superior qualifications, superior experience, et cetera, I think those statistics buttress, you know, her claim, you know, that she was discriminated against because she's African-American female. We contend that the whole issue of pretext was ignored by the district court below, and that is error. The court essentially found in favor of the defendant on almost every issue of pretext. That is superior qualifications. That is the fact that Mr. Hartz asked non-job-related questions contrary to the policy of DOD and DFAS. It is our position that if the selection had been made without an interview, that clearly Ms. Cunningham would have and should have been the selectee. It is the subjective interview that tilted the teeter-totter in favor of Mr. Griffin. But that is something that should have been sent to the trial court, to the jury, for their determination, not for the district court's determination. So all of these elements, all of these incidents of pretext that we've described in the brief, all of that should have gone to the jury, and summary judgment should have been denied. What we see here is that the district court, like quite frankly many district courts, hold these facts and these inferences in favor of the move-in for the summary judgment, when in fact it should be in favor of the non-move-in. I reserve the remainder of my time for rebuttal. Thank you, Your Honor. You're quite welcome. Ms. Fisher? May it please the Court, my name is Rachna Fisher, and I'm here on behalf of the Secretary of Defense. Ms. Cunningham's Title VII claim fails because she put forward no evidence of pretext. Ms. Cunningham admitted that Mr. Hartz might have had legitimate reasons to select Mr. Griffin, and that's fatal to her claim of pretext. And even if the court were to look at their qualifications, Mr. Griffin was well qualified for the job. Under Millbrook, a plaintiff cannot show pretext based on competing qualifications unless there could be no dispute that the plaintiff was more qualified. Mr. Griffin was a GS-12 team lead in the division. He had an MBA. He had decades of military, private sector, and government experience. And if there can be a debate about who had the better resume or who answered the interview questions better, then Ms. Cunningham cannot show pretext, if there can be a legitimate debate about those things. Now, Ms. Cunningham has repeated that she has served as Acting Chief of Benefits, but the source for that claim is her affidavit, where she states that she was the acting, in quotes, Chief of Benefits. That's not an official title that was given to her by the agency in her personnel file, and she did not claim to be the Acting Chief of Benefits in her application for the GS-13 position. While Ms. Cunningham may feel that she was the better choice, her own opinion about her qualifications are not sufficient to overcome summary judgment. And the court has recognized that employers can rely on subjective criteria as long as they don't serve as a mask for discrimination. There's no evidence that they did here. And the interview was not the only factor. Council just stated that if only the resumes were considered, Ms. Cunningham would have been selected. But Ms. Cunningham's resume was only two pages long and only listed five to six years of experience, whereas Mr. Griffin's resume was nine pages long and covered 30-plus years of experience, listed education, certifications. And so it's not clear from the record that if the court only considered the resumes, that she would have undisputably been selected. And so unless the court has any questions, the Secretary of Defense asked the court to affirm, and we'll submit on its brief. Should the district court have considered the statistical evidence that Ms. Cunningham put forward in the MD-715 report? The district court did not consider the statistical evidence because the appellant here did not develop any argument around the statistics. They were stated in the facts, but there was no argument made. That's not what the district court said. The district court said there's no role for statistical evidence in disparate treatment cases. So in the footnote, the district court mentioned that the court was not going to develop an argument for the plaintiff, but that there was no role for statistics. This court has held that statistics can be used in disparate treatment cases to bolster other evidence, but the other evidence should do most of the work. And here there's no additional evidence of pretext. So was that statement error? Yes. And if there are no additional questions, then the agency will submit on its brief. Thank you. You're quite welcome, Ms. Fisher. Thanks to you, Mr. Suri. Thank you, Ms. Fisher. Thank you, Your Honor. Just touching very briefly on the length of the resumes, the respective resumes. Sure, Mr. Griffin submitted an 11-page resume, starting from when he first started work. But the vast majority of his resume was irrelevant to the promotion at hand. That is supervisor, GS-13 supervisor of benefits. And in fact, very little of his resume pertained to his experience with respect to his qualifications for the position of supervisor of benefits. That's all I have, Your Honor. Thank you very much for your time and attention. You're quite welcome. Thanks to you, Mr. Suri and Ms. Fisher. Thanks. And we'll take the appeal under advisement.